IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY D. TRUNDLE, | Case No. 09-CV-02058-JLT |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| vs. | ORDER DIRECTING THE ENTRY OF JUDGMENT FOR DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF LARRY D. TRUNDLE |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Larry D. Trundle ("Plaintiff") asserts that he is entitled to Supplemental Security Income ("SSI") benefits. Plaintiff argues that the administrative law judge ("ALJ") failed to reject the opinion of an examining physician with correct legal standards, and that the residual functional capacity determined by the ALJ was not supported by substantial evidence. Therefore, Plaintiff seeks judicial review of the administrative decision denying his claim for SSI benefits under Title XVI of the Social Security Act. For the reasons set forth below, the Court affirms.

**PROCEDURAL HISTORY**[1]

On July 20, 2006, Plaintiff filed an application for SSI benefits in which he alleged he became disabled on November 11, 1997. AR at 66-69. The Social Security Administration denied

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

his claim on September 28, 2006, and upon reconsideration, denied the claim again on September 11, 2007. *Id.* at 37-40, 44-49. After requesting a hearing, Plaintiff testified before an ALJ on March 2, 2007. *Id.* at 51, 145-63.

The ALJ determined Plaintiff was not disabled from July 20, 2006 (the application date), and issued an order denying benefits on March 28, 2008. AR at 20-26. Plaintiff requested a review of the ALJ's decision by the Appeals Council, which was denied on November 13, 2009. *Id.* at 5-8. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for SSI benefits, Plaintiff must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). By showing an inability to perform past relevant work, a claimant establishes a prima facie case of disability. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984). If this is shown, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Id.*

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416,920(a)-(f) (1994). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* To do this, the ALJ is required to consider the relevant medical evidence, the hearing testimony and other documentary proof.

A. Relevant Medical Evidence

Plaintiff provided few documents as medical evidence of his alleged impairments. As noted by the ALJ, Plaintiff "sought very little treatment in the more than 10 years since his alleged onset date. The treatment records provided contain only notations for 12 visits during this period." AR at 24. The ALJ observed also that "the claimant does not appear to have sought any treatment whatsoever" during the period at issue, beginning on July 20, 2006, the date Plaintiff filed his application. *Id.*

On June 11, 1998, Plaintiff had a magnetic resonance imaging (MRI) scan done on his lumbar spine. AR at 122. Dr. Jesse Kahn opined that the vertebral body height and signal were normal; disc space heights were normal; and the concus was normal. *Id.* Dr. Kahn's impression was that Plaintiff had (1) "[d]egeneration of the last three lumbar discs with annular bulging at L3-4,

flattening of the sac, but not causing any major spinal stenosis" and (2) "mild central disc protrusion at L4-5 with mass effect on the sac." *Id.*

Dr. Stephen B. Berrien examined Plaintiff on February 26, 1999. AR at 140-142. He reviewed the MRI, and opined that it was "normal . . . except for a small bulging disk." *Id.* at 141. The physical examination revealed Plaintiff, who at the time weighed 282 pounds, had a "markedly stiff neck." *Id.* Plaintiff had a "full" range of motion of his shoulders, but range of motion with his back was "guarded." *Id.* When Plaintiff raised his legs 90 degrees, he reported back irritation. *Id.* In his objective findings, Dr. Berrien opined, "The patient's subjective symptoms are not substantiated by the physical findings. The patient, I feel, does not meet the criteria to be totally disabled. The patient, I feel, could do light work with the maximum lifting of 20 lbs and 10 lbs continuously." *Id.* Dr. Berrien diagnosed Plaintiff with chronic cervical and lumbar sprain/strain. *Id.* at 142.

On August 19, 2006, Dr. S.K. Madireddi examined Plaintiff, who then weighed 186 pounds. AR at 124. Plaintiff reported he had "been taking Valium on a very infrequent basis." *Id.* The musculoskeletal evaluation showed that Plaintiff had full range of motion in his cervical spine, joints in his upper extremities, hips, knees, and ankles. *Id.* at 124-125. Plaintiff reported "pain and tenderness between L1 and L5 in the midline and paraspinous areas bilaterally." *Id.* at 124. With regard to Plaintiff's ability to raise his legs, Dr. Madireddi stated that Plaintiff "complained of extreme pain at around 30 degrees on either side over the lumbar area. Seated strait leg raising earlier was painless." *Id.* Evaluating Plaintiff's functional capacity, Dr. Madireddi opined:

> Claimant should be able to carry and lift at least 25 pounds on a frequent basis and 40 pounds on an infrequent basis, although I believe that he may be able to do more than this.
>
> The claimant should be able to sit for at least six hours during an eight hour period with appropriate breaks at two hour intervals. He should be able to stand and walk for at least six hours per eight hour period. He is able to move about.

*Id.* at 125. Supporting this finding, Dr. Madireddi noted Plaintiff's range of motion, and that Plaintiff's "[g]raded muscle strength in all extremities is 5/5." *Id.* Plaintiff was diagnosed with having a history of a lumbar contusion. *Id.*

1    Dr. L.V. Bobba reviewed Plaintiff's medical record on September 25, 2006.  AR at 126-30.
2 Dr. Bobba opined Plaintiff could occasionally lift and/or carry 50 pounds, and frequently lift and/or
3 carry 25 pounds.  *Id.* at 127.  In addition, Dr. Bobba concluded Plaintiff could stand, sit, or walk for
4 about six hours in an eight-hour workday.  *Id.*  As far as postural limitations, she found Plaintiff
5 could occasionally balance; stoop; crouch; and climb ladders, ropes, or scaffolds.  *Id.* at 128.  Also,
6 she found Plaintiff could occasionally balance; stoop; crouch; and climb ladders, ropes, or scaffolds
7 Plaintiff could frequently climb ramps or stairs, balance, kneel, and crawl.  *Id.*  Dr. Bobba diagnosed
8 Plaintiff with chronic low back pain.  *Id.*

9    B.   Hearing Testimony

10    Plaintiff testified at the hearing that he was fifty-five years old and weighed 195 pounds,
11 which was a normal weight for him.  AR at 147, 149-50.  Plaintiff said he possessed a driver's
12 license, and drove about once a week.  *Id.*  According to Plaintiff, the last job he held was a truck
13 driving position.  *Id*. at 150.  However, Plaintiff said he stopped working in 1994 because the
14 company went out of business.  *Id.*  Plaintiff stated that in his truck driving position, he sat for six to
15 seven hours, and was on his feet for approximately three hours each day.  *Id.* at 159.  In this position,
16 Plaintiff said that he was not required to lift anything during his work, or do any repairs on the truck.
17 *Id.*  Plaintiff did not believe he could go back to being a truck driver because the job requires too
18 much sitting, and he has constant lower back pain.  *Id.* at 150, 160. In addition, Plaintiff said driving
19 long distances "basically" gives him problems.  *Id.* at 149.

20    With regard to his back pain, Plaintiff described the pain as "uncomfortable" and "sharp."
21 AR at 151.  Plaintiff said that the pain travels down both legs at times, and sometimes all the way
22 down to his feet.  *Id.*  To relieve the pain, Plaintiff reported he took medication and that "laying
23 down on my back and lifting my legs in the air helps relieve the pain."  *Id.*  He said that he would do
24 this four times a day, for an hour to an hour and fifteen minutes on average.  *Id.*  Plaintiff stated that
25 "any activity" makes the pain worse, and gave examples of bending, standing, walking, sitting, tying
26 his shoes, getting dressed, and taking a shower.  *Id.* at 152.  Plaintiff estimated that he could do such
27 activities for "twenty minutes tops."  *Id.*  Plaintiff said an hour was the longest he could sit in a chair
28 before having to get up and move around.  *Id.*  Plaintiff stated that, because of his condition, he was

5

no longer able to run, shoot pool, or dance. *Id.* at 154.  Also, Plaintiff said that he goes to church or to restaurants "once in a while." *Id.* at 155.

Plaintiff estimated the most he could lift was five pounds because he is weak in his right hand, though he is right-handed, and attributed this weakness to his back.  AR at 153.  In addition, Plaintiff remarked that he had "problems holding on to things" and gripping them. *Id.*  Plaintiff said he could do activities requiring the use of his hands, such as doing the dishes, for fifteen to twenty minutes before he had to rest for about half an hour. *Id.*  According to Plaintiff, the Social Security doctor evaluated his hand. *Id.*

According to Plaintiff, the reason he did not go to the doctor was that he did not have money or insurance.  AR at 152. Plaintiff stated he was able to receive medical care in 2001 through the insurance of the individual who caused the car accident in which he was injured in 1997. *Id.* at 155. Plaintiff said the medical care for the accident ended in 2002 or 2003, once the claim was settled. *Id.* Additionally, Plaintiff said he had not attempted to apply for insurance or medical care from the county because he did not think he would qualify. *Id.* at 152.

Vocational expert ("VE") David M. Dettmer testified at the hearing also.  The VE testified that Plaintiff's past work as a truck driver was medium work, and his work as a construction laborer was very heavy work.  AR at 156-57.  The VE considered a hypothetical individual and his ability to work. *Id.* at 157.  The VE determined an individual who was the same age, education, and had the same work experience as Plaintiff, who could lift 25 pounds frequently and 40 pounds occasionally; and who could stand, walk or sit six of eight hours a workday would not be able to perform Plaintiff's past work as a construction laborer. *Id.*  However, the VE determined such a person could perform work as a truck driver. *Id.*

The VE concluded that, though the lifting restrictions "would not be the full range of medium" work, the restrictions would "be sufficient to do any number of truck driving jobs." *Id.*  In addition, the VE stated sitting six hours maximum would "erode the base for truck drivers" and the individual would need to have a delivery job. *Id.*  When questioned by Plaintiff's counsel, the VE

6

stated, "My belief is that there are jobs within the general truck driver DOT[2] that would still be available." *Id.* at 158. Additionally, the VE opined, "There are other types of jobs that are delivery driver that are lighter also." *Id.* However, Plaintiff's counsel instructed the VE to "stick with truck driving." *Id.*

### C.  The ALJ's Findings

Pursuant to the five-step process, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the application date of July 20, 2006. AR at 22. Second, the ALJ found Plaintiff has a back impairment and obesity, but Plaintiff did not have "involvement of a joint resulting in an inability to ambulate effectively or perform fine and gross movements effectively. . . [or] nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. *Id.* Therefore, Plaintiff's impairment did not meet or medically equal a listing.[3] *Id.*

At the fourth step, to determine Plaintiff's residual functional capacity ("RFC"), the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." AR at 22-23. The ALJ determined that Plaintiff has the RFC "to perform medium work as defined in 20 C.F.R. 416.967(c)[4] except that the claimant can only lift 40 pounds occasionally. He can sit for up to six hours and can stand and/or walk for up to six hours in an eight our day." *Id.* at 22. Plaintiff did not have past relevant work to which he could return. *Id.* at 24. However, the ALJ concluded Plaintiff was capable of performing jobs existing in significant numbers in the national economy, such as a truck driver with delivery jobs. *Id.* at 25-26.

///

///

---

[2] The *Dictionary of Occupational Titles* ("DOT") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

[3] The ALJ included the claimant's obesity in her "assessment of claimant's other impairments and their relationships to the requirements of the listings" because there is no longer a listing for obesity. AR at 22.

[4] Medium work entails "lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

**DISCUSSION AND ANALYSIS**

In making the above findings, the ALJ gave less weight to the opinion of Dr. Berrien, noting that the doctor "examined the claimant in 1999 [and] concluded that the claimant's subjective symptoms are not substantiated by the physical findings."  AR at 24.  Upon reviewing the examining physician's findings, the ALJ stated: "While the doctor found that the claimant could do light work [citation], the undersigned disagrees.  Minimal signs, symptoms, or laboratory findings support this claimant's allegations.  Thus, the undersigned gives less weight to this opinion, as the doctor appears to have given undue credence to the claimant's subjective reports."  *Id.*  Rather, the ALJ gave "great weight" to the opinion of the other examining physician, Dr. Madireddi, finding it was "consistent with substantial evidence of record."  *Id.*  The ALJ gave "less weight" to the opinion of Dr. Bobba, the non-treating physician who reviewed the record but never examined Plaintiff.  *Id.*  In addition, the ALJ considered the testimony of the vocational expert in her step-five determination that Plaintiff could perform work at in the national economy.  *Id.* at 25-26.

A.   The ALJ properly evaluated the opinion of examining physician, Dr. Berrien.

Plaintiff asserts the ALJ improperly rejected the opinion of Dr. Berrien because Dr. Berrien "explicitly rejected Plaintiff's subjective reports."  (Doc. 15 at 6).  Also, Plaintiff asserts Dr. Berrien's opinion should have been given more weight because he gave an opinion regarding Plaintiff's functional capacity while considering the results of the MRI.  *Id.*  As his final point, Plaintiff argues that the ALJ failed to give valid reasons for rejecting the opinion.  *Id.* at 7.  On the other hand, Defendant argues, "The ALJ rejected this opinion as being inconsistent with the minimal signs, symptoms and laboratory findings present in the record."  (Doc. 20 at 6).  Defendant states that Dr. Berrien's opinion was not entitled to more weight based upon his consideration of the MRI, but rather both opinions are entitled to weight based upon their independent clinical findings.  *Id.* at 8.

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians, (2) examining physicians, who examine but do not treat the claimant, and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d. 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but even this is not binding on an ALJ when determining the existence of an

impairment or the ultimate issue of whether the claimant is disabled. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). However, Plaintiff was not under the care of treating doctor. As a result, the ALJ was required to consider only the opinions of examining and non-treating physicians. The opinion of an examining physician is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2). Thus, the opinions of the two examining physicians, Dr. Berrien and Dr. Madireddi, were entitled to equal weight, while Dr. Bobba's opinion was afforded lesser weight.

Generally, a treating physician's opinion is not binding upon the ALJ when the ALJ provides clear and convincing reasons for rejecting an opinion. *Coats v. Heckler*, 733 F.3d 1338, 1340 (9th Cir. 1984). When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Moreover, an "ALJ is entitled to choose between differing medical opinions of equal weight. Indeed, that is the ALJ's function." *Williams v. Astrue*, 2010 U.S. Dist. LEXIS 93511, at *16 (N.D. Cal. Sept. 8, 2010) (where the opinions of two examining physician opinions were in direct conflict), citing *Andrews v. Shalala*, 53 F.3d 1035,1042-43 (9th Cir. 1995).

The portion of the opinion to which the ALJ gave less weight was the RFC finding of Dr. Berrien. The ALJ was permitted to give them less weight to Dr. Berrien's diagnoses because they were based upon the unreliable subjective complaints voiced by Plaintiff.[5] *See Andrews*, 53 F.3d at 1043 ("an opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted"); *see also Johnson v. Astrue*, 155 Soc. Sec. Rep. Service 50, 202 U.S. Dist. LEXIS

---

[5] The ALJ found Plaintiff lacked credibility, and his "statements concerning the intensity, persistence and limiting effects of . . . symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." AR at 23. Plaintiff does not challenge this credibility determination.

125175, at *19, n.2 (July 28, 2010) ("an ALJ may reject an examining physician's opinion if it is based on a claimant's self-reports that have been properly discounted").[6] Though Dr. Berrien also questioned Plaintiff's credibility, it is not clear whether he completely rejected Plaintiff's subjective complaints. *See* AR at 142. Nevertheless, the ALJ determined that the examining doctor gave undue credence to Plaintiff's subjective complaints because the light work restriction was not supported by the medical record, but rather "minimal signs, symptoms, and laboratory findings." *Id.* at 24. This, too, is a specific and legitimate reason for giving Dr. Berrien's opinion less weight than the other examining physician. *See, e.g., Matney*, 981 F.2d 1019 ("an ALJ may discredit treating physician's opinions that are . . . unsupported by the record as a whole").

          1.    <u>Substantial evidence supported the ALJ's decision to give less weight to Dr. Berrien's opinion.</u>

The ALJ considered the examinations conducted by Dr. Madireddi, the other examining physician in the decision to give less weight to Dr. Berrien's opinion. Generally, for an ALJ to rely on an examining doctor's conclusions that are inconsistent with the treating physician's, the examining doctor must have gathered independent clinical findings that were based upon (1) diagnoses differing from those offered by the treating physician and are supported by substantial evidence or (2) findings based on objective medical tests that the treating physician had not considered. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Magallanes*, 881 F.2d at 751.

In this case there are no opinions of a treating physician to which Dr. Madireddi's clinical findings could be compared. Moreover, because the opinions of Dr. Madireddi and Dr. Berrien were entitled to equal weight, as examining physicians, the Court finds that the tests set forth in *Orn* or *Magallanes* do not apply. *See Williams*, 2010 U.S. Dist. LEXIS 93511, at *16. Instead, the Court

---

[6] Plaintiff argues the Court should follow the holding in *Ryan v. Comm'r of Soc. Sec.* 528 F.3d 1194 (9th Cir. 2008) (Doc. 21 at 3). In *Ryan*, the Ninth Circuit held the ALJ did not give a "clear and convincing reason" to reject an examining physician's opinion on the grounds that the opinion " was based too heavily on [the claimant's] subjective complaints." *Id.* at 1999. However, in *Ryan*, there was "*nothing in the record to suggest that [the examining physician] disbelieved [the claimant's] description of her symptoms*, or that [the examining physician] relied on those descriptions more heavily than his own clinical observations. *Id.* at 1200 (emphasis added). This is not true in the case at hand, as Dr. Berrien stated Plaintiff's "subjective symptoms are not substantiated by the physical findings." AR at 141. Moreover, the examining physician's opinion in *Ryan* was consistent with the opinion of a treating physician. *Ryan*, 528 F.3d at 1202. Therefore, the Court declines to apply *Ryan* to the case at hand.

10

1  finds that when the ALJ is confronted with competing and contradictory conclusions of examining
2  physicians, the ALJ's decision to rely upon one over the other, must be supported by substantial
3  evidence.  In making this determination, the ALJ may consider such factors as whether the extent to
4  which the opinions are supported by relevant medical evidence, the extent to which they are
5  consistent with the record as a whole, whether the doctors are specialists as to the medical condition
6  at issue and any other factors identified by, or made known to, the ALJ.  *See* 20 C.F.R. §
7  404.1527(d)(3)-(6).

8  Here, as discussed above, the ALJ determined Dr. Berrien gave undue credence to Plaintiff's
9  subjective complaints.  AR at 24.  In addition, the ALJ cited to the results of the objective medical
10 testing performed by Dr. Madireddi.[7]  *Id.*  Plaintiff had "no trigger points or spasms" and "full motor
11 strength in all of his lower extremity muscle groups and no sensor deficits."  *Id.*   Further, as noted
12 by the ALJ, Dr. Madireddi concluded "there was no evidence of joint disease, although the claimant
13 does have a history of a lumbar contusion."  *Id.*  In considering Dr. Madireddi's determination, the
14 ALJ found the opinion that Plaintiff could "lift at least 25 pounds on a frequent basis and 40 pounds
15 on an infrequent basis" was "consistent with substantial evidence of record."[8]  *Id.*  Thus, Dr.
16 Madireddi's opinion was consistent with the record and supported by objective medical testing.

17 In addition to citing Dr. Madireddi's opinion, the ALJ cited the opinion of Dr. Bobba, a non-
18 treating physician.  AR at 24.  By itself, the contrary opinion of a non-examining physician does not
19 constitute a specific, legitimate reason for rejecting an examining physician's opinion, but when
20 consistent with other evidence in the record, it can constitute substantial evidence.  *Tonapetyan v.*
21 *Halter*, 242 F.3d 1144, 1449 (9th Cir. 2001).  In this case, Dr. Bobba opined that Plaintiff could
22 carry 25 pounds frequently and 50 pounds occasionally, which was consistent the opinion of Dr.
23 Madireddi, as noted by the ALJ.  AR at 24, 127.

---

[7] Notably, Dr. Madireddi performed objective medical testing, such as "Spurlings's maneuver" and "Waddell's testing," that Dr. Berrien did not. AR at 124. Further, Dr. Madireddi tested Plaintiff's range of motion in his cervical spine, joints in his upper extremities, hips, knees, and ankles; Dr. Berrien tested only Plaintiff's range of motion in his shoulders and back. *Id.* at 124-25, 141.

[8] For example, Dr. Madireddi determined that Plaintiff could lift and carry 40 pounds occasionally but reported also, ". . . I believe that he may be able to do more than this." AR at 125. Similarly, Dr. Bobba opined that Plaintiff could lift and carry 25 pounds frequently, but felt that Plaintiff could lift and carry 50 pounds occasionally. *Id.* at 127.

1  Given this evidence, the ALJ's determination to rely upon Dr. Madireddi's 2006 opinion over
2  Dr. Berrien's 1999 conclusion is supported by substantial evidence.

   ### 2. Substantial evidence supported the ALJ's findings.

   Plaintiff argues the ALJ's findings were not supported by substantial evidence, and that the ALJ "simply substituted her opinion for Dr. Berrien's opinion." (Doc. 15 at 7). If the ALJ took this approach, this would be error because an ALJ is prohibited from substituting her own interpretation of medical evidence for the opinion of the medical professional. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03; *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"). Here, however, the ALJ did not simply substitute her opinion for that of the examining physician. Rather, when making his RFC findings, the ALJ adopted the opinion of Dr. Madireddi which the Court has already determined was consistent with other evidence in the record. Therefore, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

   ### B. The ALJ properly used the vocational expert's testimony to determine Plaintiff could perform work in the national economy.

   Plaintiff argues that "there are several fatal errors" with the ALJ's use of the vocational expert's testimony. (Doc. 15 at 8). Specifically, Plaintiff states that the VE testified about Plaintiff's past relevant work, though Plaintiff did not have any past relevant work, so "the VE's testimony has no evidentiary value." *Id.* In addition, the VE "never addressed how many jobs exist in the regional or national economy," which Plaintiff argues does not comply with SSR 83-14. *Id.*; *see also* Doc. 21 at 10. Plaintiff asserts that the VE only identified light truck driver and courier occupations for Plaintiff. *Id.* at 9. Finally, Plaintiff states that the hypothetical posed by the ALJ did not accurately reflect Plaintiff's limitations because it failed to include limitations set by Dr. Berrien. *Id.* at 10. For these reasons, Plaintiff argues that the ALJ did not properly use the VE's testimony.

   There are two methods for the Commissioner to establish that there is work in "significant numbers" in the national economy that a claimant can perform: testimony of a VE or the Medical-Vocational Guidelines. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). An ALJ may

call a VE "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999), 62 Soc. Sec. Rep. Service 607.  Here, because Plaintiff did not have the capacity to perform the full range of medium work under the Medical-Vocational Guidelines, the ALJ sought testimony from the VE "[t]o determine the extent to which [Plaintiff's] limitations erode the unskilled medium occupational base." AR at 25.  This is consistent with Social Security Ruling ("SSR") 83-12, which requires an adjudicator to consult a vocational resource when "the extent of erosion of the occupational base is not clear." *Id.*

When eliciting testimony from the VE, the ALJ must pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Tackett*, 180 F.3d at 1101, quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987).  Thereafter, the VE testifies as to what kind of jobs a claimant can perform, and whether there is a sufficient number of jobs available in the economy to support a finding that the claimant is not disabled. *Id.*, *see also* 20 C.F.R. § 404.1566(b).

*Plaintiff's Past Work*

The ALJ asked the vocational expert "to characterize the nature of Mr. Trundle's past relevant work," which the VE opined was a truck driver of medium work, DOT number 905.663-014 and construction laborer of very heavy work, DOT number 869.687-026.  AR at 156-57.  When the ALJ asked the hypothetical question, she referred back to these jobs, though Plaintiff had not worked for over 15 years.  However, the ALJ acknowledged, twice, in her opinion that Plaintiff had no past relevant work. *Id.* at 24-25.  Therefore, any error by the ALJ in referring back to work that Plaintiff performed in the past while questioning the VE and characterizing it as "past relevant work" was harmless as the ALJ did not rely on any "past relevant work" to determine Plaintiff's ability to work or to determine the ultimate issue of disability. *See Batson v. Comm'r of the Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

///

///

*Hypothetical Questions*

In posing hypothetical questions, "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. Only limitations supported by substantial evidence must be included in the question. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock*, 240 F.3d at 1163-65. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). When the "weight of the medical evidence supports the hypothetical questions posed by the ALJ," the ALJ's findings will be upheld by the court. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *see also Gallant*, 753 F.2d at 1456.

Here, the ALJ directed the VE to "assume a person the same age, education . . . and work experience as the claimant . . . assume *as set forth in exhibit 22* that the person could lift and carry 25 pounds frequently, 40 occasionally, sit six hours in an eight hour day, stand and walk six hours." AR at 157 (emphasis added). In asking this question, the ALJ clearly referenced the medical evidence, specifically the opinion of Dr. Dr. Madireddi. *See* AR at 125. Therefore, though the hypothetical question posed to the VE did not include limitations set by Dr. Berrien, it was "accurate, detailed, and supported by the medical record." *See Tackett*, 180 F.3d at 1101.

*Number of Jobs Available*

In responding to the ALJ's hypothetical question, the VE opined that an individual with the limitations would be able to perform Plaintiff's past work as a truck driver, adding "although 25/40 would not be the full range of medium, I think that it'd be sufficient to do any number of truck driving jobs." AR at 157. Then, the VE opined that the limitations given by the ALJ would "erode the base" of medium truck driving work by "three quarters." *Id.* In referring to the base number of truck driving jobs being diminished or eroded, the VE was still referring to medium work.[9] Thus, the VE did not limit Plaintiff to lighter work, but rather only twenty-five percent of the truck driving work, characterized as "medium," that he mentioned previously. When questioned by Plaintiff's

---

[9] The *DOT* defines occupation number 905.663-014 as medium work, and states the "[p]hysical demands are in excess for those of Light Work." *DOT* 905.663-014.

counsel, the VE added that "there are other types of jobs that are delivery driver that are lighter, also" and began to give examples, such as courier. *Id.* at 158. Notably, the VE did not characterize these jobs as "light work." Given these facts, Plaintiff's assertion that the VE only identified light truck driver and courier occupations for Plaintiff is incorrect.

Plaintiff argues further that the Commissioner did not follow SSR 83-14, which calls for testimony that will "guide the decision" on whether a significant number of jobs exists in the national economy that a claimant can perform. (Doc. 21 at 10-11). In relevant part, SSR 83-14 states,

> Whenever a vocational resource is used and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/ jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country.

SSR 83-14. Consequently, this ruling implies that the ALJ would have to set forth a specific number of jobs, which she failed to do. However, the Ninth Circuit "has never clearly established the minimum number of jobs necessary to constitute a 'significant number.'" *Barker v. Secretary,* 882 F.2d 1474, 1478 (9th Cir. 1989). Whether there are jobs in a significant number in the national economy is a question of fact to be determined by the ALJ. *See Martinez*, 807 F.2d at 775.

In this case, the ALJ concluded, "Considering the claimant's age, education, work experience, and residual capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR at 25. The ALJ came to this conclusion, citing the VE's testimony as evidence:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as truck driver. The vocational expert testified that the claimant's ability to sit six hours in an eight-hour day would limit him to delivery type jobs, which would erode the total occupational base for truck drivers by 75 percent. The vocational expert testified that there would still be jobs remaining after such erosion.

*Id.* at 25-26. Notably, according to the United States Department of Labor (Bureau of Labor Statistics), truck drivers "comprise one of the largest occupations" and approximately 984,500 positions, classified as "light or delivery services" within the truck driving occupation, were

available nationally in 2008 when the VE testified.[10]  Though Plaintiff argues the ALJ did not address the number of jobs available in the local economy, this argument is without merit.  The ALJ need not consider the geographical area where a claimant resides in making the determination of whether a significant number of jobs exist, as it is the number of jobs in the national economy, not their geographic location, which is ultimately at issue.  *See Barker,* 882 F.2d at 1479-80; *Martinez*, 807 F.2d at 775.  The ALJ's decision that a significant number of jobs exist in the national economy is supported by substantial evidence given the testimony of the VE, though she failed to name a specific number of jobs on the record.

**CONCLUSION**

For all these reasons, the Court concludes that the ALJ's evaluation of the opinion of Dr. Berrien, as an examining physician, was proper.  The ALJ set forth specific, legitimate reasons for giving less weight to Dr. Berrien's opinion, and substantial evidence in the record supported the ALJ's decision.  Also, substantial evidence supported the residual functional capacity determined by the ALJ.  The evidence demonstrated that medium- skilled work was available, and not only light work as Plaintiff argued.  Finally, the ALJ's determination that a significant number of jobs exist in the national economy was proper, and supported by the evidence provided by the vocational expert.  Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court because the ALJ applied proper standard and her findings are supported by substantial evidence.  *See Sanchez*, 812 F.2d at 510.

Accordingly, the Court,

1. **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security; and

---

[10]  The Court may take notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  The United States Department of Labor, Bureau of Labor Statistics, is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken website of the government agency.  *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web"); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on the website of a government agency); *United States ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 972 ("government documents are generally considered not to be subject to reasonable dispute . . . This includes public records and government documents available from reliable sources on the Internet").  As such, the Internet website for the United States Department of Labor, and facts included therein, are subject to judicial notice.

2. The Clerk of Court IS **DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Larry D. Trundle.

IT IS SO ORDERED.

Dated:  **December 17, 2010**                                                    /s/ Jennifer L. Thurston
                                                                                              UNITED STATES MAGISTRATE JUDGE